IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOHN S. WESOLEK, DEBORAH J. WESOLEK,
JOEL T. JOHNSON, RANDY LINSTEDT, DOUGLAS A.
CARSON, DR. ENRIQUE REYES-B, MARIA GEORGINA
REYES, LEVI LINDEMANN, STEPHANIE LINDEMANN,
MICHAEL P. WAGNER, DANIEL MILLER, KRISTINA
MILLER, ROEL TREVINO, TIM PETERSON,
JANICE LAU, MIKE TASZAREK, E. BRENT LUNDGREN,
GLORIA GACKLE, PETE HILL, KELCEY HILL,
KEN ULLMANN, DALE SCHNEIDER, DEBORAH
JOHN MCINTOSH, MARGARET MCINTOSH,
MERYL A. WILLERT, JR., JULIE WILLERT, TYLER ROEHL,
PAMELA G. KLOOS, JEFFREY T. KLOOS, JUDY KVAALE,
CLIFF LARSON, JUDY DVORAZK, MONA THORSTAD,
ARLYN LAND, STEVE JOHNSON, LORI JOHNSON, JANET
SKINNER, and GEORGE SLIGHT, JERRY TALBERT,
JASON GION, VICKIE GION, MARY OHLHAUSER, RANDY
OHLHAUSER, TIM HOLLAND, RICK ERICKSON, PAUL
QUINNILD, CAROL QUINNILD, MARK FOLAND, KAREN FOLAND,
DEVIN LUBINUS, BRENT LARSON, SANDRA UELAND,
JOE HENJUM, GARY HEARNEN, DON HEARDEN,
RANAIE BALL, BRIAN TJERLUND, MIKE TASZARCK,
RON BIUR, DAVE PAULSON, BRUCE KUSLER, MIKE
HOLMGREN, and GUSTAV KOPRIVA, Individually and
Derivatively, On Behalf of LAYTON ENERGY WHARTON
FUND, LP and LAYTON ENERGY FUND 2, LP



Plaintiffs,                                              CIVIL ACTION NO. 4:12-CV-03210

v.

DANIEL LAYTON, J. CLARK LEGLER, LAYTON
ENERGY TEXAS, LLC, LAYTON CORPORATION, LAYTON
ENERGY WHARTON FUND, LP, and LAYTON ENERGY
FUND 2, LP,

Defendants.

### AFFIDAVIT OF MICHAEL P. WAGNER IN OPPOSITION TO DEFENDANTS' MOTION FOR RELIEF (DOC. 19) AND IN SUPPORT OF WAGNER'S MOTION FOR RELIEF

1

MICHAEL P. WAGNER, being first duly sworn, deposes and states that:

1. I am a 65-year old semi-retired lawyer practicing primarily personal injury law in Menomonie, Wisconsin with my son, Luke M. Wagner, Esq.

2. I have been licensed to practice law and in good standing continuously since my admission to the Minnesota bar on April 22, 1976 and the Wisconsin bar on May 28, 1982.

3. I have limited federal court experience, but due to necessity, I have been admitted to the following Federal Courts: Supreme Court of the United States of America (May 21, 1979), United States Court of Appeals for the 8th Circuit (October 31, 1977), United States Court of Appeals for the 7th Circuit (September 1, 1989), United States Court of Federal Claims (August 26, 1993), United States District Court – Minnesota (April 26, 1976), United States District Court – Eastern District – Wisconsin (July 12, 1989), and United States District Court – Western District – Wisconsin (August 20, 1982).

4. **I appear in this matter as a pro se Plaintiff**. I was previously represented by Attorney Kevin Colbert who I terminated on January 20, 2014.

5. In September, 2008, I invested $100,000 (20 units) and became a limited partner in the Defendant, Layton Energy Wharton Fund, LP. I made the investment based upon promises of a large return to be paid in almost immediate periodic payments. I realized within a year that Layton Energy Wharton Fund, LP could not make good on its promises and that my investment was lost.

6. As the months and years went by, other investor partners in my community and in other Midwest states banded together and retained the services of

Attorney Kevin L. Colbert to investigate and recoup their lost investments which I understood from the Subscription Agreement (Placement Memorandum) totaled approximately $10,000,000.

7. Another investor partner asked me to join the group by signing a Contingency Fee Contract with Attorney Colbert, which I did on October 12, 2011. Before doing so, I conducted an Internet (Google) search and found no disciplinary action or lawsuits filed against Attorney Colbert. A copy of my Contingency Fee Contract with Attorney Colbert is attached hereto and incorporated herein by reference as Exhibits A-1 through A-6.

8. I understood that a large number of investor partners had signed identical Contingent Fee Contracts with Attorney Colbert. When I signed the Contingency Fee Contract, I had reasonable expectations that Attorney Colbert was competent and would keep me fully informed of his progress so I could make informed decisions as the case progressed. In fact, the Contract stated, in part, that, "We will do our best to keep you advised on how the case seems to be progressing, based on information we receive from the Court, from the other side, and from you. We will send you copies of all pleadings for your information." (See Exhibit A-4).

9  I did not receive any written communications (reports, pleadings or otherwise) from Attorney Colbert since signing the Fee Contract on October 12, 2011 until January 13, 2014 when a letter came to my office from Attorney Colbert dated January 9, 2014 stating that:

> The United States Court of Appeals for the fifth Circuit has dismissed the investor's appeal as being frivolous. Additionally, Layton moved the court for sanctions and damages which the court of appeal denied. At this point, **the lawsuit against Layton is concluded** with no relief for the

3

investors (Emphasis added).

A copy of Attorney Colbert's January 9, 2014 letter is attached hereto as Exhibit B.

10. Attorney Colbert's January 9, 2014 letter caught me by surprise because the last thing that I had found out by my own research was that all of the investors' claims were dismissed by U.S. District Court Judge Sim Lake in Case No. 4:12-CV-00063 by Order dated May 18, 2012 which was never appealed by any of the parties. In fact, I was not even aware that Case No. 4:12-CV-00063 was filed with me as one of the Plaintiffs until the case was already dismissed.

11. On August 9, 2012, I sent a letter to Attorney Colbert that I found out about the May 18, 2012 dismissal (Case 4:12-CV-00063) over the internet and concluded by asking him if he would ". . . be kind enough to let me know what went wrong with the lawsuit (reasons why the allegations were not pled with particularity and the noncompliance with Rule 23.1)? Also, what is your present strategy?"

12. I live in a small community and other investor partners that I met by chance were surprised when I advised them that their claims had been dismissed on May 18, 2012 and the time for an appeal had passed.

13. I do not have any notes, but I did receive a very short telephone call (my only one) from Attorney Colbert acknowledging my August 9, 2012 letter and promising to keep me informed of any further action.

14. I did not hear anything further from Attorney Colbert until I received his January 9, 2014 letter stating that, "The lawsuit against Layton is concluded . . ." (Exhibit B). The letter was forwarded to me by my legal assistant because I was on an extended vacation in Mexico when the letter arrived at my office in Wisconsin.

4

15. Although I was out of the country, I asked my legal assistant to do some research to confirm that the case was concluded as stated in Attorney Colbert's January 9, 2014 letter. Through her research, I found out for the first time that Attorney Colbert was involved in a second federal lawsuit (Case 4:12-CV-03210) and that the Defendants had filed a Motion for Relief (sanctions) on January 4, 2013 seeking a joint and several judgment against all Plaintiffs and Attorney Colbert in the approximate sum of $350,000 (page 12 – Doc. 19). She also advised me that Judge Lake ordered Plaintiffs to respond to Defendants' Motion for Relief by January 24, 2014 (Doc. 25).

16. I telephoned Attorney Colbert's office on Thursday, January 16, 2014 and was told that he was out of the office until Monday, January 20, 2014. I followed up with an e-mail to Attorney Colbert's office, and I obtained a flight home so I could dictate this Affidavit and file a response prior to Judge Lake's January 24, 2014 deadline.

17. I do not believe that any of the other Plaintiffs are aware that there is a motion pending seeking a judgment against them for sanctions on account of Attorney Colbert's actions in filing the second or first lawsuit.

18. On January 20, 2014, I terminated Attorney Colbert as my lawyer and spoke to Defendants' attorneys, Christopher Hackerman and Andrew Harvin, by telephone about the issues raised in their Motion (Doc. 19), my complete lack of notice of the Motion, and issues that I intended to raise in my own motion (rough draft) that I promised to fax to them. We did not resolve any of the issues in our phone call, but they understood that fairness required adequate notice of their Motion (Doc. 19) to me and all of the other Plaintiffs prior to a decision by Judge Lake.

19. I do not believe that any of the other Plaintiffs have received notice from

Attorney Colbert that there is a Motion pending seeking a judgment against them for sanctions on account of Attorney Colbert's alleged improper actions in filing and prosecuting the first and second federal lawsuits.

20. Under the circumstances, I am requesting by Motion that Judge Lake add 90 days to the deadline set forth in his Order (Doc. 25) and issue an Order directing Attorney Colbert to send all Plaintiffs a letter clearly explaining the status of the lawsuit, especially the Defendants' pending Motion seeking a joint and several judgment against Plaintiffs in the sum of $350,000.

21. I did not authorize Attorney Colbert to file and prosecute the second lawsuit, and I never gave Attorney Colbert authority (implied or otherwise) to violate his duties under Rule 11.

22. This is a very difficult Affidavit for me to make because I do not want to unnecessarily disparage Attorney Colbert's reputation. I now realize that I know very little about Attorney Colbert's litigation background and competence. In reviewing my file materials, I can find no written communications to me from Attorney Colbert, and all of the litigation materials I obtained thus far have required a proactive internet investigation by my office.

23. I have no evidence or reason to believe that Attorney Colbert has ever acted in bad faith or with an improper motive in prosecuting the two lawsuits. I believe that he simply had problems properly pleading the case which essentially was dismissed because the right words were not used to meet the technical requirements of the state and federal statutes governing derivative actions and claims of fraud.

24. I am not quite sure how to proceed with such short notice, but I have

decided to file a response and Motion opposing Defendants' Motion for Relief (Doc. 19) as there are several good legal reasons why sanctions should not be imposed upon me or the other Plaintiffs.

25.     On top of everything else, there is no possibility of my obtaining electronic filing status in the U.S. District Court for the Southern District of Texas in time to comply with Judge Lake's filing deadline of January 24, 2014, and I will have to attempt a paper filing with the Clerk by delivery or mail to the Clerk's office.

Further your Affiant sayeth not except that this Affidavit is made in good faith, in opposition to the Defendants' request for sanctions, and in support of my pro se Motion for Relief.

Dated this 21st day of January, 2014.

_____
MICHAEL P. WAGNER

Subscribed and sworn to before me
this 21st day of January, 2014.

Sandra J. Lindemann
_____
Notary Public, State of Wisconsin
My Commission Expires: 11/29/16



## CERTIFICATE OF SERVICE

This is to certify that the foregoing was forwarded to the Clerk of Court by Federal Express. Notice of this filing was served on January 21, 2014, on all attorneys of record, by facsimile, as well as by United States First Class Mail, including as follows:

Kevin L. Colbert
The Law Office of Kevin L. Colbert, JD, LL.M., PLLC
900 Town & Country Lane, Suite 205
Houston, TX 77024
Fax: 713-465-6491

Christopher Hackerman
Andrew Harvin
Doyle, Restrepo, Harvin & Robbins, LLP
600 Travis, Suite 4700
Houston, TX 77002
Fax: 713-228-6138

_____
MICHAEL P. WAGNER

# THE LAW OFFICE OF KEVIN L. COLBERT, JD, LL.M.
10827 BELLAIRE BLVD, SUITE 200
HOUSTON, TEXAS 77072

KEVIN L. COLBERT                                                   TELEPHONE (281) 495-2510
                                                                   FACSIMILE (281) 495-2539

## Contingency Fee Contract

### September 29, 2011

Re: Claims regarding Layton Energy Wharton, LP and Lawton Energy Fund 2, LP

Dear: _MICHAEL P. WAGNER ($100,000 INVESTED)_

    This letter is written to confirm the terms on which you have agreed to employ Kevin L. Colbert to represent you regarding the above-mentioned matter.

    Our services will consist of the court appearances, telephone conferences, travel, investigative work, legal research, review of material received from all sources, drafting of pleadings and incidental correspondence, participation in settlement conferences, and other necessary preparation for your response to the suit filed in the above-mentioned court.

    *This agreement does not include presentation of this case to any appellate court or preparation of motions ancillary to this representation. If appeal is necessary, client and attorney will consider the appeal as a separate and distinct cause of action requiring a new fee arrangement.*

**1. Professional Undertaking**
The Firm has undertaken to represent you only in connection with the Matter and not undertaken to represent you in connection with any other dispute or issue.
Although we endeavor to represent your interests vigorously and efficiently, we cannot guarantee success in any given case. You acknowledge that Mr. Colbert has made no promises or guarantees concerning the outcome of the Matter, and nothing in this agreement, or in any prior discussions we may have had, can be construed as such a promise or guarantee.

You acknowledge that the Firm's performance depends, in part, upon:
a. Our prompt receipt of documentation, information, authorization, and instructions from you;
b. Your prompt review and execution of documents; and
c. Your cooperation in general.
You therefore agree to cooperate with the Firm:
a. In the investigation, preparation, and prosecution of the Matter;
b. By providing us with all requested documents and information;
c. In disclosing truthfully and fully all facts and information;
d. In keeping us advised of all developments relating to the Matter; and

EXHIBIT _A-1_

e. By attending meetings, hearings, and other proceedings upon request.

## 2. Fees and their Payment

I will be handling the trial and any significant hearings in the Matter personally, but others associated with our firm may do substantial amounts of work on your case.

The Firm will be compensated by a TWENTY (20%) contingency fee interest. When you sign this agreement, you are conveying to us an irrevocable 20% interest in the net proceeds arising from prosecution of the Matter, whether obtained by settlement or by judgment or otherwise and whether denominated actual damages, costs, attorneys' fees, punitive damages or other recovery, and in whatever form they may take. In the event that settlement is obtained or judgment rendered in such a manner that you obtain nonmonetary relief or consideration, we will propose a valuation of the proceeds of your case.

If you disagree with that value, then within five days of receiving ours, you will state your own value. If we cannot reach an agreement, we will engage in a one-day "baseball" style arbitration by submitting the two competing valuations to a mutually acceptable arbitrator, who shall choose one of the two valuations at the end of the arbitration session. Each of us will provide to the other all data reasonably necessary to evaluate any in-kind interest or non-monetary consideration that is created by virtue of this representation. The Firm may memorialize its interest by making appropriate filings where appropriate. When and if funds are received that are subject to the contingency interest set forth here, you consent in advance to have them negotiated into the trust account of Kevin L. Colbert. Prior to any distribution of such funds, however, you will be provided a complete accounting of proposed distributions and must consent to those distributions.

## 3. Costs and Expenses

It is often necessary for us to incur expenses for items such as travel, lodging, meals, telephone calls, transcription, and the like. Similarly, some matters require substantial amounts of costly ancillary services such as photocopying, messenger and delivery services, and computerized legal research. The Firm agrees to advance all such costs and expenses incurred in connection with the Matter, including, but not limited to, photocopying, messenger and delivery services, expert witnesses, court reporter fees, computerized research, travel (including mileage, parking, air fare, lodging, meals, and ground transportation), long-distance telephone calls, telecopying, court costs, filing fees, and other similar expenses.

Such costs are to be repaid out of the proceeds, if any, from the Matter, and costs shall be repaid to the Firm prior to the division of funds on an actual cost basis.

## 4. Termination

You have the right to terminate our representation at any time. You agree that the Firm will have the same right to withdraw from the representation under the following circumstances:
a. If you breach this agreement;
b. If you fail to cooperate with the Firm in this representation;
c. If, for professional or ethical reasons (such as a presently unknown conflict of interest),

EXHIBIT A-2

the Firm cannot proceed with the representation.

If the Firm elects to withdraw, we shall give you reasonable notice to enable you to secure other counsel, and you agree to execute any documents necessary to complete the withdrawal.

If you elect to terminate this agreement, it will not terminate our contingency interest in the outcome of the Matter. Should you breach this agreement in such a manner that we are reasonably required to withdraw or to terminate the agreement, we will attempt to accommodate new counsel should you choose to hire new counsel, but while we may choose to do so, under no circumstances are we required to relinquish any part of the contingency fee provided herein in order to make that accommodation.

**5. Integration, Choice of Law, Arbitration, Texas Disciplinary Rules**

This agreement represents the entire agreement between us. In entering into this agreement, neither Mr. Colbert nor the Firm have made, and you are not relying upon, any representations or promises other than those contained in writing in this letter. To avoid any misunderstanding over the terms of this representation, this agreement shall not be modified or waived in any respect except in writing signed by both parties.
This agreement shall be construed under and in accordance with the laws of the State of Texas, excluding any conflicts of law, rule or principle that might otherwise refer to the substantive law of another jurisdiction.

It is our intention to follow the Texas Disciplinary Rules of Professional Conduct and the Texas Lawyer's Creed, a copy of the Texas Lawyer's Creed is attached to this agreement as exhibit "A" for your review. If, despite that intent and endeavor, any part of this agreement shall for any reason be found unenforceable, the parties agree that (1) all other portions shall nevertheless remain valid and enforceable, and (2) a provision most similar to the stricken provision but otherwise complying with applicable law shall be substituted therefor. Since we represent our own interests in crafting this retention agreement, we encourage you to consult other counsel of your own choosing regarding the terms of this agreement.

**Any dispute arising out of or relating to this agreement, our interactions leading to it, or our performance of the agreement or of the representation of you shall be resolved as follows. First, the parties agree that sixty (60) days before the filing of any arbitration proceeding hereunder, the party requesting relief must demand and attend mandatory mediation before a mutually acceptable mediator to attempt to resolve any dispute. In the event the parties are unable to resolve such dispute, the affected party shall initiate an arbitration proceeding utilizing the rules of (but not employing) the American Arbitration Association ("AAA") for the arbitration of complex commercial cases. In any dispute of less than $250,000, the parties shall jointly appoint a single arbitrator. In any dispute of a greater amount, each party shall appoint his/her or its own party arbitrator, and these two party arbitrators shall in turn appoint a third, neutral arbitrator. All party arbitrators' conduct and the tests for their eligibility shall be governed by AAA rules of disinterest. The time limits hereunder shall not apply in the event emergency injunctive relief is required,**

EXHIBIT A-3

**but only to the extent of such emergency injunctive relief itself. To the extent that these rules and the rules for "baseball" style arbitration referenced in paragraph 2 conflict, the procedure set out in paragraph 2 shall control.**

Just as you are depending on our expertise and professionalism, we will depend on you to keep faith with us if complexities develop in your case where you did not expect them. Your continuing faith in this firm during what might become a prolonged period is vitally important to the maintenance of your legal rights; its importance simply cannot be overemphasized.

Conversations between an attorney and client are protected by law and by the disciplinary rules to which attorneys are subject. No attorney can be compelled to reveal any confidential communications, except in accordance with section 261.101 of the Texas Family Code regarding child abuse, which states that if a professional (which includes your attorney and employees of your attorney) has cause to believe that a child has been abused or neglected or may be abused or neglected or that a child is a victim of an offense under section 21.11 of the Texas Penal Code, and the professional has cause to believe that the child has been abused as defined by section 261.001 or 261.401 of the Texas Family Code, the professional shall make a report not later than the forty-eighth hour after the hour the professional first suspects that the child has been or may be abused or neglected or is a victim of an offense under section 21.11 of the Texas Penal Code. The reason for this confidentiality protection is that the experience of many hundreds of years has proved that the interests of the client are best served when the client's attorneys are fully informed of *all* the facts well in advance of any possible contest. Your candor will assist us tremendously in representing you; it is doubly protected by law and the disciplinary rules and is very much encouraged. You can rely on us to be candid with you, as well.

We will do our best to keep you advised on how the case seems to be progressing, based on information we receive from the court, from the other side, and from you. We will send you copies of all pleadings for your information.

We will do everything possible to expedite the appropriate disposition of your case consistent with the time limitations imposed by law and the protection of your present and future legal interests. There may well be some difficult decisions for you to make. It is an attorney's responsibility to advise you on the legal ramifications of the decisions, but *you* must make the actual decisions.

It is our experience that the tax considerations of our clients are sophisticated and often complex. Therefore, although tax considerations are addressed in each case, this firm's services do not include tax advice, and you will be expected to obtain independent tax advice.

*This firm reserves the right and privilege to destroy a client's file 5 years from the date the file is closed.*



EXHIBIT A-4

The Texas Supreme Court and Courts of Appeals have adopted the Texas Lawyer's Creed as a mandate to the legal profession in Texas. The creed requires our firm to advise you of the contents of the creed when undertaking to represent you. A copy of the Texas Lawyer's Creed is attached to this employment agreement for your review.

The Texas Government Code requires that you be advised that the State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar will provide you with information if you call 1-800-932-1900.

You hereby agree that, if you should at any time become displeased or dissatisfied with any aspect whatsoever of this firm's legal representation, or if you should at any time have any serious question concerning that representation, you will *immediately notify* this firm of that fact in writing by *certified mail, return receipt requested.*

You agree that this firm reserves the right to terminate the attorney-client relationship and withdraw from your further representation for any of the following reasons:

1. your failure to cooperate and comply fully with any reasonable request of this firm's about your case;

2. your engaging in conduct or making statements that render it unreasonably difficult for this firm to carry out the purposes of its employment;

3. your insisting that this firm engage in conduct that is contrary to our judgment and advice;

4. your failure to pay fees and costs as provided in this agreement.

**Privacy Policy Notice:** In the course of representing our clients, we receive all manner of significant personal financial information from them. As a client of the firm, you are advised that all information we receive from you will be held in confidence and not released to outside persons, except as agreed to by you or as required under applicable law. We retain records relating to professional services that we provide so as to assist our clients with their professional needs and, in some cases, to comply with professional guidelines. To guard your nonpublic personal information, we maintain physical, electronic, and procedural safeguards that comply with our professional standards. In this connection, you understand that, for convenience, from time to time we may use the Internet or other electronic mail system without encryption to communicate with you or others and that there are related privacy and security issues with this means of communication. Nevertheless, you have agreed that we may use Internet or electronic mail as an economical, convenient form of communication.

**Privacy Policy Regarding Social Security Numbers:** Social Security numbers will be divulged only when necessary during the course and within the scope of our employment.



EXHIBIT  A-5

- Social Security numbers are collected by the firm from various sources, including income tax returns as well as the client.

- Social Security numbers are used to identify parties for a number of purposes, including determination of wages, preparation of orders to withhold wages for child support and reports filed with the state of Texas, and obtaining information about retirement benefits.

- All information received from our clients is confidential, particularly Social Security numbers. Social Security numbers are not divulged by the firm unless authorized by the client or required in the course of representation.

- Only employees of the firm who have a need to know will have access to this personal information.

Every step is taken to protect the client's privacy. This information is kept secure within the office of the firm in file folders and file drawers, until the file information is retired and the file is removed to a locked, off-site storage facility. Client information will eventually be shredded.

This firm is privileged to have this opportunity to be of service to you. We appreciate your trust and confidence, as well as your business. If you completely approve this agreement, please date and sign the original of this letter where indicated, return it to this office, and retain the enclosed copy for your file. On receipt of this signed agreement and receipt of the requisite amounts, we will begin work on your case.

Sincerely yours,

[signature]

Kevin L. Colbert

ACCEPTED AND AGREED TO ON _OCTOBER 12, 2011_

[signature: Mike W__]
393 RED CEDAR ST
MENOMONIE, WI 54751
MIKEW@WAGSLAW.COM
715-235-6400 OR 715-505-7600 (CELL)

The Texas Lawyer's Creed

EXHIBIT __A-6__

RECEIVED JAN 13 2014

# THE LAW OFFICE OF KEVIN L. COLBERT, JD, LL.M., PLLC
900 TOWN & COUNTRY LANE, SUITE 205
HOUSTON, TEXAS 77024

KEVIN L. COLBERT

TELEPHONE (713) 465-1630
FACSIMILE (713) 465-6491

January 9, 2014

Michael P. Wagner
393 Red Cedar St.
Menomonie, WI 54751

RE: Case 4:12-cv-03210, John S. Wesolek, et al v. Daniel Layton, et al

Dear Mr. Wagner,

The United States Court of Appeal for the Fifth Circuit has dismissed the investor's appeal as being frivolous. Additionally, Layton moved the court for sanctions and damages which the court of appeal denied. At this point, the lawsuit against Layton is concluded with no relief for the investors.

Cordially,

Kevin L. Colbert

EXHIBIT B